1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6

KIMBERLY R.,

7                          Plaintiff,

8          v.

9    COMMISSIONER OF SOCIAL
     SECURITY,

10                         Defendant.

Case No. C19-30 TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11
12          Plaintiff has brought this matter for judicial review of defendant's denial of her

13   application for disability insurance benefits.

14          The parties have consented to have this matter heard by the undersigned

15   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16   MJR 13.

17                          I.      ISSUES FOR REVEW

18       A. Did the ALJ harmfully err at step two in finding plaintiff's narcolepsy with
            cataplexy a non-severe medical impairment?
19       B. Did the ALJ harmfully err in discounting opinions from plaintiff's treating and
            examining medical providers?
20       C. Did the ALJ harmfully err in discounting a lay opinion from plaintiff's physical
            therapist?
21
22                          II.     DISCUSSION

23          The Commissioner uses a five-step sequential evaluation process to determine if

24   a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to

25

determine, at step four, whether the plaintiff can perform past relevant work, and if

necessary, at step five to determine whether the plaintiff can adjust to other work.

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of

proof at step five to show that a significant number of jobs that the claimant can perform

exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20

C.F.R. § 416.920(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,*

874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

*Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v.*

*Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that

supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court

considers in its review only the reasons the ALJ identified and may not affirm for a

different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative

law require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ – not post hoc rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26

(9th Cir. 2009) (citations omitted).

The ALJ must consider medical evidence in assessing the RFC and cannot then

discredit such evidence because it is inconsistent with that RFC. *See Laborin v.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

*Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017). The Ninth Circuit has held that if an ALJ does this, the ALJ thereby "indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do.'" *Laborin,* 867 F.3d at 1154 (citing *Trevizo*, 862 F.3d at 1000 n.6 and *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (holding that this boilerplate language conflicts with the regulations and rulings)). "This practice 'inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC.'" *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis original).

A.  <u>Whether the ALJ erred in evaluating the medical evidence</u>

The Social Security regulations separate opinions from medical professionals between those from "acceptable medical sources," and those from other medical sources. *See* 20 C.F.R. §§ 404.1502(a), (d), (e), 416.902(a), (d), (e) (2016). Acceptable medical sources are those with doctoral degrees, such as physicians and psychologists. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a) (2016). Other sources include nurse practitioners[1] and licensed social workers. *See* 20 C.F.R. §§ 404.1502(d), (e), 416.902(d), (e) (2016).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*,

---

[1] The Commissioner issued revised regulations regarding nurse practitioners, potentially changing the standard by which the ALJ's reasons are judged. *See* 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Those regulations apply only to claims filed after March 27, 2017, and thus do not apply here. *See id.*

871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.*

With respect to opinions from other sources, the ALJ need only provide germane reasons that are specific to each source. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (holding that nurse practitioners are "other sources" rather than acceptable medical sources, and an ALJ need only provide germane reasons to discount their opinions).

An ALJ may not reject a medical source opinion because it is based on the claimant's self-reports when the medical source analyzes those self-reports using objective measures. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (2017). In *Buck v. Berryhill*, the court held that the ALJ erred when he discounted the examining physician's opinion on the basis that the "opinion was based in part on [the claimant's] self-report" because the examining doctor "also conducted a clinical interview and a mental status evaluation." *Id.* The court held that the interview and mental status evaluation were "objective measures and cannot be discounted as a 'self-report.'" *Id.*

1.  Dr. Platter

Dr. Platter examined plaintiff on May 5, 2016. AR 77-91. Dr. Platter reviewed plaintiff's medical records on reconsideration of her disability application and opined that plaintiff could stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. AR 89. In addition, he found plaintiff "[m]ust periodically alternate sitting and standing to relieve pain and discomfort." AR 89. The ALJ gave

partial weight to Dr. Platter's opinion and adopted Dr. Platters' description of plaintiff's capacity for light physical exertion into the RFC. AR. 25. Although the ALJ had noted Dr. Platter's assessment of plaintiff's "further need periodically to alternate sitting and standing," this limitation was neither adopted nor rejected in formulating plaintiff's RFC. AR 25, AR 20.

The Commissioner asserts that Dr. Platter's statement on alternating sitting and standing is merely standard text on the Disability Determination Explanation and contains no opinion. Dkt. 11, at 5-6. This erroneous reading of the Disability Determination Explanation is belied by the ALJ's own acknowledgement of Dr. Platter's opinion. AR 25.

The ALJ erred by neglecting to incorporate this limitation into the RFC.  Unless the ALJ is rejecting a physician's opinion, the ALJ must adopt or incorporate a physician's limitations into the RFC. *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009); *see also, Sawyer v. Astrue*, 303 F. App'x 453 (9th Cir. 2000) (finding error where the RFC assessment did not accurately include the limitations found by state agency consultants and the ALJ's decision did not otherwise explain the weight given to the opinions). An incomplete RFC assessment that fails to accurately describe all of plaintiff's limitations cannot be said to be supported by substantial evidence. *See Ghanim v. Colvin,* 763 F.3d 1154, 1166 (9th Cir. 2014) (ALJ erroneously relied on a vocational expert's testimony that was flawed because the ALJ improperly discounted medical evidence and plaintiff's testimony, and the hypothetical and RFC were therefore incomplete).

1    The Court finds this error harmful because a requirement in the RFC that a

2    plaintiff alternate between sitting and standing may have precluded some otherwise-

3    compatible sedentary and light work. Social Security Ruling ("SSR") 83-12, Special

4    Situations: 1. Alternate Sitting and Standing,

5    https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-12-di-02.html. An individual who

6    "may be able to sit for time, but must then get up and stand or walk for awhile before

7    returning to sitting," is "not functionally capable" of the prolonged sitting or standing

8    contemplated by most sedentary or light work. *Id.* Nonetheless, an individual's ability to

9    satisfy a need to alternate position during typical breaks would preserve the

10   occupational base. *Id.*

11   The Commissioner argues that a requirement to alternate position "periodically"

12   does not mean to alternate "at will"; they contend it is vague enough to "accommodate

13   the degree of alternating involved in light work," and therefore plaintiff's RFC would not

14   have been substantially changed by the inclusion of a requirement that she vary her

15   position during the day. Dkt. 11, at 6. This is not a persuasive argument, because the

16   ambiguity of the term "periodically" does not automatically resolve in favor of a finding of

17   ability to do light work. Instead, an RFC that includes the requirement to alternate sitting

18   and standing "periodically" must at least provide an estimate of how frequently plaintiff

19   would need to alternate position. *See, Craig v. Astrue*, 2013 U.S. Dist. LEXIS 11264 at

20   *7-8, Case No. C12-0927-MJP-MAT (W.D. Wa. Jan. 9, 2013); *see* SSR 96-9p, 1996

21   SSR LEXIS 6 ("The RFC assessment must be specific as to the frequency of the

22   individual's need to alternate sitting and standing.")

23

24

25

1
2
3
4
5

The ALJ erred by not resolving the ambiguity as to how frequently plaintiff would need to vary sitting and standing. Plaintiff's RFC cannot be assumed compatible with the occupations that were identified by the vocational expert. *See Embrey v. Bowen*, 849 F.2 418, 422-23 (9th Cir. 1988); 20 C.F.R. § 404.1527(e). The ALJ therefore erred, and the error was harmful, in failing to incorporate Dr. Platter's opinion into the RFC.

6

    2.  Dr. Rendall

7
8
9
10
11
12
13
14
15

Dr. Rendall, one of plaintiff's treating physicians, opined that plaintiff was "unable to perform normal daily activities of sitting, standing, lifting, carrying, or walking consistently or reliably enough to be an asset to any employer, even for part time work." AR 458. She opined that plaintiff had significant physical limitations and would likely be absent from work, leave early, and require unscheduled breaks more than 5 days per month. AR 460. Dr. Rendall based her opinion on "multiple medical evaluations" documenting plaintiff's pathologies, including irritable bowel syndrome, diverticulitis, joint hypermobility, back pain, bladder pain, depression, poor sleep and chronic fatigue, and "typically disabling" migraines. AR 458.

16
17
18
19
20
21

The ALJ gave Dr. Rendall's opinion little weight and reasoned that the opinion relied heavily on plaintiff's subjective complaints. AR 26. The ALJ further reasoned that the opinion describing plaintiff's 20-year history of treatment for headaches was inconsistent with plaintiff's skilled work history up to 2013. *Id.* Finally, the ALJ faulted Dr. Rendall's description of plaintiff's work functioning restrictions for failing to provide supporting objective medical evidence. *Id.*

22
23
24

Because other physicians in the record contradicted Dr. Rendall's opinion, the ALJ was required to provide specific and legitimate reasons to give Dr. Rendall's opinion little weight. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

25

The ALJ erred by assuming that Dr. Rendall only drew from plaintiff's subjective complaints; the record shows that Dr. Rendell considered Dr. Rendall's own treatment records, which included her treatment notes, her review of reports from other physicians, and medical test results. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding error when a physician's treatment records are not considered in their entirety). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Yet the ALJ does not validly reject an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her opinion with her own observations. *Ryan v. Commissioner*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

The Commissioner argues that Dr. Rendall's notes, which make use of the SOAP recording format ("Subjective findings, objective findings, assessment, plan"), predominantly record much of plaintiff's ailments in the "S," rather than the "O" section. Dkt. 11, at 8. Yet the ALJ's opinion did not provide findings indicating that Dr. Rendall relied more heavily on plaintiff's subjective reports than her own clinical observations over the course of twenty years of treatment.

In her Medical Source Statement, Dr. Rendall stated that she based her opinion on "clinical observation, blood and urine tests, imaging, multispecialty evaluations, professional judgement." AR 461. Her treatment notes not only catalog plaintiff's subjective complaints but also indicate that she regularly reviewed objective medical test results, including, but not limited to, multiple MRIs. *See* AR 469, 472, 474, 484, 494,

589. Dr. Rendall's notes indicate she reviewed other physicians' notes and results as part of plaintiff's care. *See, e.g.*, AR 464, 469, 473, 474, 483, 484.

Similarly, to the extent the ALJ faulted Dr. Rendall for failing to identify objective findings in her report, the ALJ erred by not considering Dr. Rendall's access to and reliance on objective evaluation records in making her report. Although Dr. Rendall cited no specific medical signs and laboratory findings on her "Medical Source Statement" (AR 459-61), Dr. Rendall's notes document both plaintiff's self-reports and Dr. Rendall's review of plaintiff's objective evaluations. The ALJ therefore erred in rejecting Dr, Rendall's opinions for failing to include objective findings.

The ALJ also erred in citing a discrepancy between Dr. Rendall's description of plaintiff's history of migraines and plaintiff's work history, when there is no such discrepancy. A statement that plaintiff has a 20-year history of migraines, which are "typically disabling," does not suggest that the plaintiff's headaches have precluded plaintiff from working for the entirety of 20 years. Dr. Rendall's opinion does not conflict with plaintiff's ability to work for several years during that period.

The record indicates that (1) plaintiff's earliest experience with migraines was over 20 years ago; (2) plaintiff's treatment with Botox injections controlled her condition for approximately 10 years; and (3) in 2013, prior to the period of alleged disability, her migraines returned with increased frequency and intensity. AR 1097-1098. Plaintiff discussed the return of her migraines with Dr. Rendall in August 2014. AR 474. Plaintiff sought emergency treatment for a ten-day history of migraine in December 2014 (AR 873), which resolved the immediate symptoms but not the chronic headaches (AR 873, AR 892). In 2016, Plaintiff underwent additional rounds of Botox injection treatment, but

1   the treatment subsequently failed to control her symptoms. AR 1113, 1568, 1160-61.

2   The record of plaintiff's reports to her physicians, including Dr. Rendall, of her

3   worsening migraine headaches since the onset of her alleged disability is consistent

4   with Dr. Rendall's opinion that her migraines, when they occurred, prevent plaintiff from

5   working. *See* AR 541 (Dr. Jimenez), AR 1097 (Dr. Allen), AR 474 (Dr. Rendall).

6           The ALJ failed to give specific and legitimate reasons to reject Dr. Rendall's

7   opinion. This error is harmful because of the weight of Dr. Rendall's opinion as plaintiff's

8   treating physician; plaintiff's RFC would likely have been different had the ALJ properly

9   considered Dr. Rendall's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir.

10  2014) (harmful error where treating physician's opinion is inappropriately discounted);

11  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an

12  error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability

13  determination"). The ALJ shall reconsider Dr. Rendall's opinion, with the full context of

14  her physician's notes of objective medical evaluation, on remand.

15          3.  Dr. Jimenez

16          Dr. Jimenez, plaintiff's treating rheumatologist, opined that plaintiff could not work

17  because of her pain, neurocognitive issues, and psychological issues. AR 718. He

18  opined that her fatigue, exacerbated by insomnia, made her daily abilities unpredictable.

19  Dr. Jimenez opined that plaintiff could not sit for prolonged periods due to her chronic

20  pain and spine dysfunction, and that plaintiff's headaches made her "globally impaired."

21  *Id.* Dr. Jimenez found that plaintiff had significant physical limitations that limited her

22  sitting, standing, and walking hours to less than two hours each in a day, and that she

23  would be absent more than five days per month. AR 720-21. He opined that her pain

24

25

would interfere with her work productivity. AR 721. Dr. Jimenez's letter included the opinion that plaintiff's impairments could not be fully described by the Medical Source Statement he provided. AR 719.

The ALJ rejected Dr. Jimenez's opinion, with the reasoning that Dr. Jimenez had inappropriately declared the plaintiff "disabled," had failed to provide objective medical findings, and had based his opinion entirely on plaintiff's subjective complaints. AR 27.

That Dr. Jimenez used the word "disabled" to describe plaintiff is not a specific and legitimate reason to reject Dr. Jimenez's opinion. As with Dr. Rendall's opinion, the ALJ's reasoning that Dr. Jimenez failed to provide objective findings and relied too much on plaintiff's subjective complaints is belied by Dr. Jimenez's full treatment records and notes.

Dr. Jimenez ordered MRIs in November 2013 and May 2014, which are consistent with his diagnoses of her lumbar and cervical degenerative disc disease, disc extrusion, and degenerative spondylosis. AR 589, 602. Dr. Jimenez also ordered laboratory tests that showed evidence of inflammation, leading to his diagnosis in October 2014 of an autoimmune disorder and finding of likely fibromyalgia. AR 557, 547.

The ALJ's opinion fails to explain why these and other objective findings in Dr. Jimenez's notes should not be considered in his opinion. Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding the ALJ erred in finding a treating doctor's opinion "conclusory" and supported by "little

1  explanation," where the ALJ "overlook[ed] nearly a dozen [treatment] reports related to

2  head, neck, and back pain").

3      Because Dr. Jimenez is another of plaintiff's treating physicians, the ALJ's errors

4  in evaluating his opinion would not be harmless. *Garrison v. Colvin*, 759 F.3d 995, 1013

5  (9th Cir. 2014).  The ALJ would likely have evaluated plaintiff's RFC differently if Dr.

6  Jimenez's opinion had been taken into account. The ALJ shall evaluate Dr. Jimenez's

7  opinion in its full context on remand.

8      B.  Whether the ALJ properly evaluated non-medical opinion evidence

9      Dr. Becker, PhD, conducted a physical capabilities exam of plaintiff in his

10  capacity as a physical therapist. Dr. Becker evaluated plaintiff's physical capacities for

11  thirteen hours over two days. AR 1937. Dr. Becker's evaluation found that plaintiff

12  exhibited significant aberration of her limb temperatures, a significant swelling response

13  over the course of the evaluation, significant hypermobility in her hands and fingers, and

14  significant work physiological fatigue. AR 1990. Based on her results, he opined that

15  plaintiff was "work intolerant" and incapable of competitive and predictable sustained

16  work. *Id.*

17      An ALJ is required to consider and give germane reasons for rejecting the

18  opinion of a physical therapist in a functional capacity evaluation. *Revels v. Berryhill*,

19  874 F.3d 648, 656-57 (9th Cir. 2017). The ALJ rejected this conclusion for two reasons.

20  First, the ALJ found that Dr. Becker's findings of significant swelling were "wholly

21  inconsistent" with an absence of synovitis (joint swelling) or joint inflammation in the

22  record, and second, the ALJ found Dr. Becker's opinion that plaintiff could not sit for

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

long periods to be inconsistent with plaintiff's ability to sit when flying to Scotland in 2016. AR 26, citing AR 1937, AR 972-1217.

The finding of an inconsistency between Dr. Becker's measurements and the non-findings of synovitis or inflammation, is based on a factually misleading premise. Dr. Becker's physical capabilities evaluation measured how plaintiff's body responded to work-like tasks over the course of the evaluation – which is not a medical exam for swelling-related conditions like synovitis.

Plaintiff's "swelling profile" referred to plaintiff's degree of swelling after physical exertion, showing that after two days of testing various tasks, plaintiff's limbs and extremities had swollen in response. AR 1937, 1942, 1979, 1982. The comparison of this swelling profile with whether plaintiff presented with synovitis or joint inflammation is inapposite. This is not a germane reason to reject Dr. Becker's opinion.

The ALJ also found an inconsistency between plaintiff's fatigue in testing and her ability to take a 16-hour trip to Scotland seated in an airplane. The Commissioner further argues that plaintiff's statements that she "didn't want to come back" and she "hated the idea of coming home" conflict with her complaints of increased emotional and physical pain lasting a week after returning from Scotland. Dkt. 11, at 13-14.

Dr. Becker's trials found that in response to trials of seated work tasks, plaintiff's heart rate rose higher than the expected response (up to 101 bpm seated as opposed to 87-89 bpm) and her respirations came faster. AR 1987. The results indicated that even mild physical exertion caused significant fatigue for plaintiff.

Likewise, plaintiff took a 16-hour trip to Scotland, but she testified that the flight was broken into three legs to allow her to move her body and rest at intervals. AR 59.

After her arrival in Scotland, plaintiff testified that her pain and fatigue from the flight made her too "miserable" to leave her hotel room for three days. *Id.*; *see* AR 1226 (Scotland trip disrupted sleep cycle for weeks, leading to another change in sleep medication). The increased pain and extended fatigue response to flying are consistent with Dr. Becker's findings.

Accordingly, the ALJ erred in rejecting Dr. Becker's opinion. On remand, the ALJ should consider Dr. Becker's opinion in accordance with this opinion.

C.  Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

1

2   The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

3   satisfied, the district court still has discretion to remand for further proceedings or for

    award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

4   Here, the ALJ must re-evaluate the impact of plaintiff's narcolepsy with cataplexy

5   on the RFC. The ALJ must also reconsider the opinion evidence of Drs. Platter, Rendall,

6   Jimenez, and Becker and reassess plaintiff's RFC accordingly. Because it is unclear

7   precisely what impact a reconsidered RFC would have on Plaintiff's ability to perform

8   work at step five, remand for further proceedings is the appropriate remedy.

9

10                                    CONCLUSION

11   Based on the foregoing discussion, the Court finds the ALJ erred when they

12   determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

13   is REVERSED and this matter is REMANDED for further administrative proceedings, to

14   include taking new evidence if necessary. The ALJ is directed to reevaluate the opinions

15   of Dr. Platter, Dr. Rendall, Dr. Jimenez, and Dr. Becker on remand, and to re-consider

16   the plaintiff's condition of narcolepsy with cataplexy. The ALJ is also directed to re-

17   evaluate the plaintiff's RFC.

18

19   Dated this 12th day of August, 2020.

20

21

22                                              *Theresa L. Fricke*

23                                              _____
                                                Theresa L. Fricke
24                                              United States Magistrate Judge

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15